NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNEDY FUNDING, INC. | |
| Plaintiff, | Civil No. 07-669 |
| v. | Hon. Faith S. Hochberg, U.S.D.J. |
| RUGGERS ACQUISITION AND DEVELOPMENT, *et al.* | **OPINION** |
| Defendants/Third Party Plaintiffs | Date: July 31, 2007 |
| v. | |
| JEFFREY WOLFER, KEVIN WOLFER, | |
| Third Party Defendants. | |

**HOCHBERG, District Judge:**

**I.     Introduction:**

This matter comes before the Court upon Plaintiff's Motion to Dismiss Counts 1, 2, 3, 6, 7, 8, 9, 10, and 11 of Defendants' Counterclaim with prejudice and Third Party Defendants' Motion to dismiss all Counts of the Third-Party Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).  This Court has reviewed the motion without oral argument pursuant to Fed. R. Civ. P. 78.

**II.    Factual Background:**

This action arises from a commercial lending transaction between Plaintiff Kennedy Funding, Inc. ("KFI"), the lender, and Defendant Ruggers Acquisition and Development, LLC

1

("Ruggers"), the borrower.  Defendant Ruggers is a Nevada limited liability company organized under the laws of Nevada, and Defendant Christopher Sullivan, a Guarantor of the loan commitment ("Commitment") at issue in this case, is a resident of Nevada (together "Defendants").  Plaintiff KFI is a corporation organized under New Jersey laws; Third Party Defendant Jeffrey Wolfer, President and Co-Chief Executive Officer of KFI, is a resident of New Jersey; and Third Party Defendant Kevin Wolfer, President and Co-Chief Executive Officer of KFI, is a resident of New Jersey.

Defendant Ruggers sought a loan from KFI to purchase real property in Laughlin, Nevada.[1]  KFI and Ruggers executed a loan commitment (the "Commitment") on or about October 10, 2006 stating that KFI would loan Defendant Ruggers up to $18,000,000 to purchase the Nevada property and that the loan was not to exceed 50% of the market value of the property.  On or about October 10, 2006, Ruggers wired $180,000 to KFI "as a partial payment of the advanced fee against the total commitment fee contemplated in the 'loan commitment.'" *See* Counterclaims at ¶31.  The loan did not close on the scheduled date of October 20, 2006 after a dispute arose regarding the property's value and the amount KFI would lend.  After the contemplated loan between KFI and Ruggers did not close, Defendant Ruggers demanded that KFI return the commitment fee; Defendant Ruggers alleges that in the event that KFI "elected not to proceed towards closing" or "was unable to perform its obligations under the letter commitment," the $180,000 was to be returned to Defendant Ruggers.  *See* Counterclaims at ¶33

---

[1] Because this is a Motion to Dismiss, the Court treats the allegations in Defendants' Counterclaims and the Third Party Complaint as true and must draw all reasonable inferences in favor of the non-moving party. *See Hospital Building Co. v. Trustee of the Rex Hospital*, 425 U.S. 738 (1976); *D.P. Enter. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984).

and ¶34.  KFI refused and filed an action against Defendants to recover the unpaid portion of the commitment fee due and owing to KFI.  Defendants argue that KFI is operating an advance fee scheme designed to deprive them and others of their property.  *See generally* Counterclaims.

Defendants answered the Complaint and filed a Counterclaim against KFI and a Third-Party Complaint against the Wolfers asserting causes of action of (1) New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1, *et seq.* ("NJRICO"); (2) unjust enrichment (based upon the failure of certain preconditions of the loan commitment); (3) unjust enrichment (based upon an aborted contract and/or a breach of contract by Plaintiff); (4) breach of contract; (5) breach of the covenant of good faith and fair dealing; (6) common law fraud; (7) New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 ("CFA"); (8) illusory contract; (9) void option contract; (10) declaratory judgment; and (11) unconscionable contract.  Plaintiff filed this Motion to Dismiss Counts 1, 2, 3, 6, 7, 8, 9, 10 & 11 of the Counterclaim with prejudice and Third Party Defendants filed this Motion to Dismiss all Counts of the Third-Party Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

**III.    Standard of Review:**

To survive a Rule 12(b)(6) Motion to Dismiss, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007).  Although a court does not need to credit a complaint's "bald assertions" or "legal conclusions," it is required to accept as true all of the allegations in the complaint as well as all reasonable inferences that can be drawn therefrom and view them in the light most favorable to the plaintiff.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997),

*citing Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997). The Supreme Court recently held that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp.*, 127 S.Ct. at 1969. In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's claims are based on those documents. *Pension Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1992).

**IV.    Analysis:**

A.    Count 1:  New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1, *et seq.* ("NJRICO")

The NJRICO statute provides that "It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." N.J.S.A 2C:41-2(c). "Racketeering activity" is defined as one of a number of crimes specifically enumerated in Chapter 20 and Chapter 21 of Title 2C of the New Jersey statutes. *See* N.J.S.A. 2C:41-1a(n). To constitute a violation of the NJRICO statute, the predicate acts must: (1) be among those specified in the statute, (2) be related, and (3) pose a threat of continued criminal activity. *State v. Ball*, 268 N.J. Super. 72, 99 (App. Div. 1993), *aff'd*, 141 N.J. 142 (1995), *cert. denied*, 516 U.S. 1075 (1996). "A RICO offense arises from the use of power, acquired through crime, to gain or maintain a foothold in an enterprise that operates in interstate commerce." *Id.* at 99,

*citing United States v. Jannotti*, 729 F.2d 213, 230 (3d Cir. 1984). A pattern of racketeering activity is defined as at least two incidents of racketeering conduct. *See* N.J.S.A. 2C:41-1d(1).

Defendants Ruggers argue that the facts alleged in the Complaint sufficiently plead violations of N.J.S.A. §2C:21-4 and §2C:21-7.[2] Because Defendants are pleading a fraudulent predicate act, Fed. R. Civ. P. 9(b) requires such allegations to be pled with particularity.[3] Therefore, to plead violations of §2C:21-4(a) and §2C:21-7, Defendants Ruggers must identify a false statement that was made "with purpose to deceive or injure" or "for the purpose of obtaining property or credit." Defendants Ruggers allege that the KFI parties issued the Commitment knowing that it contained the false statement that KFI "claimed to be ready and willing and able to make [the loan] to Plaintiffs." The Commitment was signed on October 10, 2006, and the loan was scheduled to close on October 20, 2006. Accepting all facts as true in Defendants' Counterclaim and Third Party Complaint, the Court denies Plaintiff's and Third Party Defendants' Motion to Dismiss Counts 1. The Court will allow the NJRICO claim to go forward for Defendants to conduct discovery on whether KFI had the necessary funds to issue the loan or had taken any steps to secure funding from another lender in the short period of time between when the Commitment was signed and when the loan was scheduled to close.

---

[2] N.J.S.A. §2C:21-4(a) states that "a person commits a crime...if he...utters any writing or record knowing that it contains a false statement or information, with purpose to deceive or injure anyone or to conceal any wrongdoing."
  N.J.S.A. §2C:21-7 states that "[a] person commits a crime if in the course of business he...makes a false or misleading written statement for the purpose of obtaining property or credit."

[3] Fed. R. Civ. P. 9(b) states that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

B.    Count 2 (Unjust Enrichment based upon the Failure of Certain Preconditions of the Loan Commitment) and Count 3 (Unjust Enrichment Based upon an Aborted Contract and/or a Breach of Contract by Plaintiff)

To state a claim for unjust enrichment, a plaintiff must allege that 1) at the plaintiff's expense 2) the defendant received a benefit that 3) under the circumstances would make it unjust for the defendant to retain the benefit without paying for it. *See Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp 2d 496, 505 (D.N.J. 2006). Additionally, a plaintiff must show that at the time the benefit was conferred he expected renumeration from the defendant and that failure to pay the plaintiff unjustly enriched the defendant beyond his contractual right. *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. 1994). Defendants allege that Plaintiff KFI and Third Party Defendant Wolfers were unjustly enriched when they accepted and retained an advance fee as partial payment of certain fees that would be due upon the closing of a loan which KFI never made. Defendants Ruggers argue that KFI and the Wolfers have done nothing to justify the retention of the $180,000 paid to them by Defendants.

Defendants argue that the Commitment states in explicit terms that it was not to become effective until the total commitment fee was paid to KFI, which was due upon closing of the loan. Because no such closing took place, Defendants argue that the Commitment never became a binding agreement and that the Commitment provided that if Plaintiff KFI elected not to proceed towards the closing of the loan, or if Plaintiff KFI was unable to fulfill its obligations under Commitment, KFI would return the $180,000 partial commitment fee to Defendants. On the face of their Complaint, Defendants have alleged a benefit conferred upon Plaintiff KFI at Defendants' expense. Accepting all facts as true in Defendants' Counterclaim and Third Party Complaint, Defendants state unjust enrichment claims, and the Court denies Plaintiff's and Third

6

Party Defendants' Motion to Dismiss Counts 2 and 3.

C.  Count 4 (Breach of Contract) and Count 5 (Breach of Covenant of Good Faith and Fair Dealing) Against Only Third Party Defendants Wolfers

The elements necessary to establish a claim for breach of contract in New Jersey are: (1) the existence of a contract between the parties; (2) a breach of that contract; and (3) damages flowing therefrom.  *See John Hancock Mut. Life. Ins. Co. v King*, 1997 WL 373512, *3 (D.N.J. March 26, 1997); *Bauer v. City of Newark*, 7 N.J. 426, 432 (1951).  Third Party Defendants Wolfers argue that because the Wolfers are not parties to the Commitment, they can have no contract liability to Third Party Plaintiff Ruggers, *citing Kennedy Funding, Inc. v. Lion's Gate Dev*. LLC, 2006 WL 1044807, *7 (D.N.J. April 18, 2006).  Third Party Plaintiff Ruggers argue that Jeffrey Wolfer signed the loan commitment and that there was a separate oral agreement between Third Party Defendants Wolfers and Ruggers in which the Wolfers made promises to induce Ruggers to pay the advance fee.  Accepting as true the allegations in Ruggers' Third Party Complaint, the Court denies Third Party Defendants' Wolfers Motion to Dismiss Counts 4 and 5.

D.  Count 6:  Common Law Fraud

To establish a claim of common law fraud, a plaintiff must show (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the plaintiff rely on that statement; (4) reasonable reliance by the plaintiff; and (5) resulting damages.  *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).  Defendants Ruggers allege that Plaintiff KFI represented to them that Plaintiff KFI would extend an $18,000,000 loan and that KFI orally assured Ruggers that if the loan was not consummated, the advance fee would be returned to Ruggers.  Defendants also assert that the Commitment was

part of the fraudulent scheme to induce Ruggers to pay KFI an advance fee, even though KFI and the Wolfers never intended to provide a loan to Ruggers. Defendant Ruggers allege that they relied on oral statements, in addition to the Commitment, and therefore paid KFI $180,000 in anticipation of a successful loan from KFI. Accepting as true the allegations in Defendants' Counterclaims and Third Party Complaint, Defendants state a common law fraud claim, and the Court denies Plaintiff's and Third Party Defendants' Motion to Dismiss Counts 6.[4]

E.     Count 7:  New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 ("NJCFA")

To state a NJCFA claim, Defendant Ruggers must allege (1) unlawful conduct on the part of KFI; (2) an ascertainable loss to Ruggers; and (3) a causal relationship between the unlawful conduct and the loss. *See Prof. Cleaning & Innovative Bldg. Servs. v. Kennedy Funding, Inc.*, 2005 U.S. Dist. LEXIS 17024, *5 (D.N.J. Aug 11, 2005). The NJCFA defines unlawful conduct as "the use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N.J.S.A. §56:8-2. Accepting all facts as true in Defendants' Counterclaim and Third Party Complaint, Defendants state a NJCFA claim because they allege unlawful conduct by KFI, an ascertainable loss to Ruggers, and a causal relationship between the unlawful conduct and the loss. The Court denies Plaintiff's and Third Party Defendants' Motion to Dismiss Count 7.

---

[4] Fed. R. Civ. P. 9(b) states that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Court finds that Defendants have met the requirements of Fed. R. Civ. P. 9(b) in their common law fraud claim.

F. Count 8:  Illusory Contract

An illusory promise is defined as, a "promise which by [its] terms make[s] performance entirely optional with the promisor whatever may happen, or whatever course of conduct in other respects he may pursue."  *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 577-78 (D.N.J. 2002) (quoting Restatement (Second) of Contracts, §2, comment e (1979)).  Thus, if the promisor's performance is entirely optional, the promise is deemed to be illusory.  Here, Defendants claim that the Commitment is unenforceable and void as a matter of law because it allows KFI the unfettered option of performing under the agreement.

Accepting all allegations in the Counterclaims as true, performance was not entirely optional.  *See, e.g., citing Kennedy Funding, Inc. v. Lion's Gate Dev*. LLC, 2006 WL 2786927, *4 (D.N.J. September 26, 2006) (holding that "although the terms establish certain requirements that must be complied with, they do not make performance on the part of KFI entirely optional.")  A lender may retain discretion to cancel the agreement for good faith reasons, including dissatisfaction of certain conditions precedent.  *Walker v. First Pennsylvania Bank, N.A.*, 518 F.Supp. 347, 353 (E.D. Pa. 1981).  Here, as in *Lion's Gate*, KFI was obligated under the Commitment to provide the loan if certain conditions, including the submission of proper documentation, occurred.  The proofs on the merits will address whether, and to what extent, KFI was ready, willing, and able to perform, and there are allegations of fraud if there was not a genuine intent and readiness to perform.  Defendants fail to state a claim upon which relief can be granted as to Count 8, and Plaintiff's and Third Party Defendants' Motion to Dismiss Count 8 is granted.

G.     Count 9:  Void Option Contract

An option contract is defined as "a continuing offer supported by a sufficient consideration, a promise upon an executed legal consideration, and so irrevocable for the time of its continuance."  *Kennedy Funding, Inc. v. Lion's Gate Dev*. LLC, 2006 WL 2786927, *4 (D.N.J. September 26, 2006) (*citing Borough of West Caldwell v. Borough of Caldwell*, 138 A.2d 402 (N.J. 1958)).  Consideration may be based on either a "detriment incurred by the promisee or a benefit received by the promisor." *Cont'l Bank of Pa. v. Barclay Riding Academy, Inc*., 459 A.2d 1163, 1172 (N.J. 1983).  Defendants argue that KFI did not provide any consideration for its receipt of the option and that this failure of consideration makes the Commitment unenforceable.  Accepting all facts as true in Defendants' Counterclaim and Third Party Complaint, the Court denies Plaintiff's and Third Party Defendants' Motion to Dismiss Count 9, and whether KFI provided consideration to Defendants will be developed during discovery.

H.     Count 10:  Declaratory Judgment

Defendants seek declaratory judgment that material terms of the Commitment are missing. Defendants allege that the contract does not contain the definite loan amount and interest rate and that KFI subjectively evaluated the value of the collateral upon which the loan amount would be based.  Accepting all facts as true in Defendants' Counterclaim and Third Party Complaint, the Court denies Plaintiff's and Third Party Defendants' Motion to Dismiss Count 10, and discovery may proceed on this issue.

I.     Count 11: Unconscionable Contract

Defendants argue that the Commitment was unconscionable as a matter of law because KFI did nothing but receive (1) $10,000 for preparing and executing a "Loan Commitment" and

(2) $180,000 as an advance fee. An agreement is unconscionable only when "grossly unfair contractual obligations resulting from the use of such expertise or control by the one possessing it, which result in assumption by the other contracting party of a burden which is at odds with the common understanding of the ordinary and untrained member of the public." *Shell Oil Co. v. Marinello*, 307 A.2d 598, 601-602 (N.J. 1973). Here, Defendants allege that the "Loan Commitment" is unconscionable because of "grossly disproportionate bargaining power" such that the "principle of freedom of contract is non-existent and unilateral terms will result." See Defendants' Counterclaims at ¶¶256-57. Accepting all facts as true in Defendants' Counterclaim and Third Party Complaint, the Court denies Plaintiff's and Third Party Defendants' Motion to Dismiss Count 11, and discovery may proceed on whether the Commitment was an unconscionable contract.

### V.     Conclusion:

The Court grants Plaintiff's Motion to Dismiss Defendants' Counterclaims and Third Party Defendants' Motion to Dismiss the Third Party Complaint for Count 8 and denies for Counts 1, 2, 3, 4, 5, 6, 7, 9, 10, and 11. An appropriate order will issue.

**/s/ Faith S. Hochberg**

Hon. Faith S. Hochberg, U.S.D.J.